| | |
|---|---|
| **JAMES COLEMAN**, *on behalf of himself and all others similarly situated*, <br><br> *Plaintiff*, <br> v. <br><br> **HUMANA, INC. and ASPEN HEALTH, INC.** <br><br> *Defendants*. | **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.    This action arises out of Defendants', Humana, Inc. ("Humana") and Aspen Health, Inc. d/b/a Aspen RXHealth ("Aspen") (together "Defendants"), practice of making pre-recorded and other telemarketing calls to consumers *without their consent* in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and provisions of the North Carolina General Statute § 75-100, *et seq.*

2.    Humana is an insurance company that provides healthcare products and services to consumers, including but not limited to Medicare Advantage plans and Medicare Part D prescription drug plans.

3.    Aspen is a technology company that provides clinical pharmacy services, such as optional comprehensive medication reviews ("CMRs"), on behalf of its insurance company partners.

4.    In 2019, Humana contracted with Aspen to contact Humana Medicare Advantage members to provide optional Medication Therapy Management (MTM) services.[1]

---

[1] *See* https://aspenrxhealth.com/resource/humana-collaborates-with-aspen-rxhealth-to-offer-new-app-to-connect-patients-and-pharmacists/ (last accessed August 1, 2022).

5. Aspen provides its services via its technology platform and a network of "gig economy" or 1099 contractor pharmacists, many of whom use Aspen's platform as a "side hustle."

6. Aspen's technology platform operates like other gig economy platforms such as Uber and Lyft – it attempts to match pharmacists with patients and then compensates the pharmacists only after they successfully contact a patient and deliver services.

7. Aspen recruits pharmacists and advertises that the pharmacist's potential compensation is entirely dependent upon how much the pharmacist is willing to work:

**How much can I expect to earn working for Aspen RxHealth?**

How much you make is dependent on how much you work and how successful you are at delivering services. Just like other gig economy solutions (e.g. Uber and Lyft drivers), the more you work, and in this case, are able to successfully contact patients and deliver services, the more you can make. Initial pharmacists have been quite successful on an "average per hour" rate compared to typical pharmacist wages.[2]

8. Unlike Uber and Lyft, a consumer does not use the Aspen platform to seek out or initiate contact with a pharmacist.

9. Rather, Aspen makes consumer information and phone numbers available in its platform and turns its pharmacists loose on the consumers resulting in rampant and unwanted telephone calls.

10. Many pharmacists using the platform report high customer rejection rates and a cold calling "telemarketing" atmosphere:

- "Sounds phenomenal on paper until you spend full days calling patients and they just don't want to talk to you" Apr. 9, 2022 – Pharmacist

- "You're NOT compensated for your time. I feel like a telemarketer." Apr. 9, 2022 – Pharmacist.

---

[2] https://community.aspenrxhealth.com/faq (last accessed August 1, 2022).

- "They are extremely over staffed with pharmacists which make it difficult to reach patients. This also makes patients very angry that they are bombarded with calls and patients will take it our [sic] on you. Low success rate and you get paid for completing, not attempting consults." – Aug. 24, 2020 – MTM PHARMACIST.

- "time consuming, hard to reach patients (end up leaving voicemail, voicemail full, not reachable number, wrong number)" – July 20, 2020 – MTM Clinical Pharmacist

- "hard to make money because no one answers the phone" July 18, 2020 – Pharmacist.

- "never can get anyone on the phone, wrong numbers, and only get paid for consults completed so waste of time." July 18, 2020 – Pharmacist.

- "Hard to get people on the phone and you only get paid for completed calls." Nov. 5, 2021 – Pharmacist.

- "CMRs ($40) seem to be recycled through other vendors too. Of 50 calls just two picked up, but they had CMRs done just last week by some one else. TMRs ($6) only about 25% of calls are successful." – Nov. 19, 2019 – CMR Pharmacist in Tampa, FL.

- "Easy to get burnt out due to a high number of unsuccessful calls because patients don't pick the phone and when they do they either are not interested in the CMR/TMR service or have already been contacted by someone else from within the network or outside it. All the Pharmacists are fighting for scraps and competing against each other, screwing the patient in the process and no wonder so many of them are rude and mad when you call or just hang up. No contact = No payment. . . .They want you to go above and beyond which is only possible if you [] can reach patient's and if the patients are cooperative. Realistically most of them don't care and just want to get off the phone or trust their doctors more than the pharmacist and are not interested." May 13, 2020 – Pharmacist in Miami, FL.

- "High call rejection from patients." July 23, 2021 – MTM Pharmacist in Chicago, IL.

- "It is really hard to reach patients" Mar. 1, 2022 – Clinical Pharmacist

- "Not enough work for their employees, people do not want to speak to you and they want you to stick to their scrip. [sic] They treat people like they are not intelligent pharmacist. Not consentient pay." – May 3, 2022 – Pharmacist.

- "Hard to get hold of patients and pay rate is low" July. 18, 2022 – Pharmacist.

- "cold calls, patients don't answer, income is not steady" Jan. 28, 2021 – Pharmacist in Houston, TX.

- "Great side money, also very good experience for anybody new to the field. Sometimes have to put in a lot of work to speak to one person, but not a deal breaker nothing perfect"– July 10, 2022 – Pharmacist in Memphis, TN.[3]

11. One pharmacist attempted to help Aspen by confirming that there were many patients that were not interested in the services and recommended that instead of having the pharmacist "cold call patients" to first determine interest, Aspen should "make it easier for patients to opt out, without talking to a pharmacist" and that only patients interested in the service should be added to the queue.[4]

12. Another pharmacist took to reddit, a social news aggregation, content rating, and discussion website, explaining that many pharmacists do not opt patients out in response to do-not-call requests because they believe it will negatively impact the pharmacists using the platform:

> there's a false notion that "opting out" a patient to receive calls will dock against you somehow so hardly anyone opts out a patient, they just put them back in the general queue for anyone to grab. Ive been yelled at and cussed at because the patient has told three pharmacists to stop calling and none of them wanted to opt out the patient. Huge pet peeve because it wastes my time and the patients time and makes us look really bad. Okay, rant over.[5]

13. Humana and Aspen automatically enroll consumers in this optional service then bombard them with both live and prerecorded calls without first determining if (1) the consumer is interested in the optional service, or (2) the consumer has provided the requisite consent to be called.

---

[3] https://www.glassdoor.com/Reviews/Aspen-RxHealth-Pharmacist-Reviews-EI_IE2922565.0,14_KO15,25.htm (last accessed August 1, 2022).
[4] https://www.glassdoor.com/Reviews/Aspen-RxHealth-Pharmacist-Reviews-EI_IE2922565.0,14_KO15,25_IP2.htm?sort.sortType=OR&sort.ascending=true&filter.jobTitleFTS=Pharmacist&filter.iso3Language=eng (last accessed August 1, 2022).
[5] https://www.reddit.com/r/pharmacy/comments/hj3q2m/aspen_rxhealth_experiences/ (last accessed August 1, 2022).

14.     Mr. Coleman received these calls and repeatedly asked that they stop.

15.     Mr. Coleman's telephone number was registered on the National Do-Not-Call Registry at the time of the calls.

16.     Accordingly, Mr. Coleman brings this TCPA action on behalf of himself and two classes of similarly situated individuals under 47 U.S.C. §§ 227(b) and 227(c) and two classes of similarly situated individuals under N.C. Gen. Stat. §§ 75-102 and 75-104(a).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

18.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claim that they form a single case or controversy.

19.     This Court has jurisdiction over the Defendants because Defendants regularly conduct business transactions in this District and have committed tortious acts in this District. Defendant Humana maintains a regional office in North Carolina at 6135 Park South Drive, Suite 510, Charlotte, North Carolina 28210.    Defendants purposefully directed their telemarketing activities at residents within this District.

20.     Venue is proper in this District because Defendants conduct significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

21.     Mr. Coleman is, and at all times mentioned herein was, a citizen and resident of North Carolina.

22.     Mr. Coleman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23.     Mr. Coleman is, and at all times mentioned herein was, a "telephone subscriber" as defined by N.C. Gen. Stat. § 75-101(11).

24.     Humana is, and at all times mentioned herein was, a Delaware corporation headquartered at 502 West Main Street, Louisville, Kentucky 40202.

25.     Humana maintains a regional office at 6135 Park South Drive, Suite 510, Charlotte, North Carolina 28210.

26.     Humana is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27.     Humana is, and at all times mentioned herein was, a "telephone solicitor" as defined by N.C. Gen. Stat. § 75-101(10).

28.     Aspen is, and at all times mentioned herein was, a Delaware corporation headquartered at 401 East Jackson Street Suite 3300, Tampa, Florida 33602.

29.     Aspen is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

30.     Aspen is, and at all times mentioned herein was, a "telephone solicitor" as defined by N.C. Gen. Stat. § 75-101(10).

## GENERAL FACTUAL ALLEGATIONS

31.     Humana is an insurance company that provides healthcare products and services to consumers, including but not limited to Medicare Advantage plans and Medicare Part D prescription drug plans.

32.     Pursuant to 42 CFR § 423.153(d), Part D sponsors must establish a Medication

Therapy Management (MTM) program.

33.     Part D sponsors auto-enroll targeted beneficiaries each year when they meet certain eligibility criteria; however, the enrolled beneficiaries may refuse or decline individual services at any time.[6]

34.     Part D Sponsors, such as Humana, are expected to honor all requests to opt-out of the plan's MTM program.[7]

35.     In all cases, the Centers for Medicare & Medicaid Services ("CMS") "expects sponsors to maintain documentation of beneficiary requests to opt out of the MTM program."[8]

36.     According to CMS, sufficient documentation includes "beneficiary opt out forms or mainframe documentation from calls including the date, time and the name of the person requesting to opt out."[9]

37.     Aspen is a technology company that provides clinical pharmacy services, such as CMRs, on behalf of its insurance company partners.

38.     In 2019, Humana contracted with Aspen to contact Humana Medicare Advantage members to provide optional MTM services.[10]

39.     Upon information and belief, Humana and Aspen are compensated by Medicare for performing MTM services such as comprehensive medication reviews for plan beneficiaries.

40.     Humana, or someone acting on its behalf and at its direction, makes prerecorded telemarketing calls marketing its MTM program to consumers who were auto-enrolled into such

---

[6] *See, e.g.,* CY 2020 Medication Therapy Management Program Guidance and Submission Instructions, available at: https://www.cms.gov/Medicare/Prescription-Drug-Coverage/PrescriptionDrugCovContra/Downloads/Memo-Contract-Year-2020-Medication-Therapy-Management-MTM-Program-Submission-v-041019-.pdf (last accessed August 2, 2022).
[7] *See id.* at 4-5.
[8] *Id.* at 4.
[9] *Id.* at 5.
[10] *See* https://aspenrxhealth.com/resource/humana-collaborates-with-aspen-rxhealth-to-offer-new-app-to-connect-patients-and-pharmacists/ (last accessed August 1, 2022).

program.

41.     These telephone calls come from unknown numbers or different numbers, including but not limited to 347-732-5528, 929-314-5029, 252-359-3819.

42.     These calls play various prerecorded messages, including but not limited to the following:

> Hello.  This is Humana calling [Consumer Name] with important benefit information.  Please call us toll free at 1-866 348-8354.  TTY users please dial 711.  Please call us back at 1-866-348-8354.  If you return our call from a different phone number than where we left this message, for security purposes you will be asked to enter that phone number.  Thank you.  Goodbye.

> This is Humana Pharmacy Clinical Programs calling to let you know that it is time for your annual medication review.  To complete your review or to schedule one at your convenience please call 1-855-576-4042.  We are available to take your call Monday through Friday from 8am-7pm eastern time.  Again our number is 1-855-576-4042.  Thank you and have a great day.

> Hello.  This is Humana calling to inform you that you're still eligible for your Medicare recommended medication review.  Your wellbeing is our priority.  93% of participants agree that their overall health and wellbeing improved as a result of completing this review.  To schedule an appointment or complete the review please give us a call Monday through Friday at 1-855-462-4541 between the hours of 8AM to 7PM eastern time.  Once again that number is 1-855-462-4541.  Thank you and have a great day.

> Hi.  This message is for [Consumer Name].  A pharmacist calling on behalf of Humana is trying to contact you because you qualify for a medication review this year.  . . . . A knowledgeable pharmacist from our trusted partner Aspen RXHealth can be reached at 1-888-843-5779.  Call today to schedule your appointment.  Again, that number is 1-888-843-5779.  Thanks and have a great day.

43.     In addition to these automated, prerecorded calls, Aspen places live calls on behalf of Humana through Aspen's application.

44.     These calls solicit consumers to take part in the comprehensive medication review

service offered by Aspen on behalf of Humana and come from 252-359-3819, a telephone number associated with Aspen.

45.     When 252-359-3819 is called back, a prerecorded message plays that identifies the number as being associated with Aspen and states "thank you for calling Aspen, RX Health".

46.     Upon information and belief, Humana and Aspen have not implemented the required policies, procedures and training required by the TCPA.

47.     Upon information and belief, Humana and Aspen fail to honor do-not-call requests and have no policy or procedure for communicating that information between themselves.

48.     For example, if Humana receives a do-not-call request or an opt-out request, Humana does not provide Aspen with the same information or instruct Aspen to stop calling.

49.     If Aspen receives a do-not-call request or an opt-out request, Aspen does not provide Humana with the same information or instruct Humana to stop calling.

50.     Numerous consumers have turned to the internet to complain about Defendants' telemarketing practices.[11]

## MR. COLEMAN'S FACTUAL ALLEGATIONS

51.     Mr. Coleman is the user of a cellular telephone.

52.     Mr. Coleman's cellular telephone is not associated with a business and is used for personal purposes.

53.     Mr. Coleman registered his telephone number on the National Do Not Call Registry on February 10, 2005.

54.     Mr. Coleman received numerous automated calls from Humana that played one of the prerecorded messages described above on at least the following dates: January 31, 2022,

---

[11] *See, e.g.* https://800notes.com/Phone.aspx/1-855-576-4042 (last accessed August 2, 2022).

February 10, 2022, February 15, 2022, February 18, 2022, February 22, 2022, February 24, 2022, March 2, 2022, March 10, 2022, March 11, 2022, March 14, 2022, April 13, 2022, April 19, 2022, April 22, 2022, April 25, April 27, 2022, May 6, 2022, May 23, 2022, and May 24, 2022.

55.     Mr. Coleman also received calls from Aspen RX on behalf of Humana on at least the following dates: February 11, 2022, February 12, 2022, February 22, 2022, February 23, 2022, May 12, 2022, May 16, 2022, May 31, 2022, June 2, 2022, June 3, 2022, June 4, 2022.

56.     The calls from Aspen RX were placed by different pharmacists seeking to perform a CMR with Mr. Coleman.

57.     Mr. Coleman repeatedly advised the callers that he was not interested in the service and requested to be removed from the calling lists.

58.     Mr. Coleman also advised the callers that he placed his number on the National Do Not Call Registry.

59.     Upon information and belief, the callers did not opt Mr. Coleman out, as requested, and instead placed him back into the queue to be called again.

60.     When Mr. Coleman made his do-not-call requests, sometimes the callers would hang up on him, rush him off the phone , or disconnect the call.

61.     Mr. Coleman also contacted Humana directly about the calls and requested to be removed from the calling lists.

62.     During the calls to Humana, Mr. Coleman would provide Humana with the telephone numbers that called him, the numbers he was directed to call back, and the names of the identified partnered pharmacy company calling him.

63.     Despite Mr. Coleman's efforts and requests to have the calls stopped, they

continue.

64.     During one call with a Humana representative, the representative expressed surprise that Mr. Coleman was receiving calls as Humana's records reflected his opt-out requests and preference not to be contacted by phone.

65.     Mr. Coleman also contacted Aspen RX directly about the calls and requested to be removed from the calling lists.

66.     Mr. Coleman also attempted to block the telephone numbers that were calling him, however the calls would still get through to his voicemail.

67.     One of Aspen's pharmacists realized that Mr. Coleman blocked the number and, rather than cease calling Mr. Coleman, she kept calling and leaving voicemail messages asking him to unblock the number so that she could perform the CMR.

68.     In fact, this Aspen pharmacist left a voicemail for Mr. Coleman that stated she was going to ask tech support to override the nine (9) call attempt limit so that she could continue to call Mr. Coleman.

69.     This same pharmacist also attempted to use stopping the calls as an incentive to persuade Mr. Coleman to call back to conduct his CMR, stating that after the CMR "then, people will stop calling you."

70.     Mr. Coleman never provided prior express written consent (or any consent) to Defendants for these telephone calls.

71.     In addition, Mr. Coleman repeatedly asked not to be called and revoked any consent that may have existed.

**DEFENDANTS' LIABILITY**

72.     Because Defendants' calls constitute telemarketing, Defendants are required to

obtain prior express written consent from the persons to whom Defendants made calls.

73.     "Prior express written consent" is specifically defined by regulation as:

[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(9)(emphasis added).

74.     Mr. Coleman never provided Defendants with any consent, written or otherwise.

75.     Accordingly, each of Humana's telemarketing calls to Mr. Coleman using an artificial or prerecorded voice violated 47 U.S.C. § 227(b).

76.     For violations of 47 U.S.C. § 227(b), Mr. Coleman is entitled to a minimum of $500 per call.

77.     Mr. Coleman is entitled to $1500 per call if Defendant's actions are found to be knowing or willful.

78.     The TCPA also prohibits making multiple telephone solicitation calls to a telephone number on the National Do Not Call Registry.  *See* 47 U.S.C. § 227(c)(5).

79.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

80.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

81.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

82. Defendants repeatedly violated this rule by placing telephone solicitations to telephone numbers on the National Do-Not-Call registry, including to Mr. Coleman's number.

83. For violations of 47 C.F.R. § 64.1200(c), Mr. Coleman is entitled to $500 per call.

84. Mr. Coleman is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

85. In addition, the TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

86. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

87. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order.").

88. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

89. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list for calls made by or on behalf of that person or entity, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

90.    These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures.  47 C.F.R. § 64.1200(d).

91.    Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have implemented the required policies and procedures.

92.    Defendants violated this rule by not having such policies and training, and failing to honor do-not-call requests for calls they made or that were made on their behalf including the continued calls to Mr. Coleman after he directly asked not to be contacted.

93.    For violations of 47 C.F.R. § 64.1200(d), Mr. Coleman is entitled to an additional $500 per call.

94.    Mr. Coleman is entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

95.    North Carolina General Statute § 75-102(a) prohibits making "a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber's telephone number appears in the latest edition of the "Do Not Call" Registry."  N.C. Gen. Stat. § 75-102(a).

96.    Mr. Coleman's number was on the National Do-Not-Call Registry prior to Defendants' calls.

97.    For violations of N.C. Gen. Stat. § 75-102(a), Mr. Coleman is entitled to recover $500 for the first violation, $1,000 for the second violation and $5,000 for the third and any other violation that occurs within two years of the first violation.

98.    North Carolina General Statute § 75-102(b) prohibits a telephone solicitor from making "a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber previously has communicated to the telephone solicitor a desire to receive no further telephone solicitations from the telephone solicitor to that number."  N.C. Gen. Stat. § 75-102(b).

99.     Mr. Coleman communicated to Defendants a desire to receive no further telephone solicitations from Defendants, yet Defendants continue to place calls to Mr. Coleman.

100.     For violations of N.C. Gen. Stat. § 75-102(b), Mr. Coleman is entitled to recover $500 for the first violation, $1,000 for the second violation and $5,000 for the third and any other violation that occurs within two years of the first violation.

101.     North Carolina General Statute § 75-104(a) prohibits a person from using "an automatic dialing and recorded message player to make an unsolicited telephone call." N.C. Gen. Stat. § 75-104(a).

102.     An "automatic dialing and recorded message player" is defined by statute as, "[a]ny automatic equipment that incorporates a storage capability of telephone numbers to be called or a random or a sequential number generator capable of producing numbers to be called that, working alone or in conjunction with other equipment, disseminates a prerecorded message to the telephone number called." N.C. Gen. Stat. § 75-101(2).

103.     Humana utilized an automatic dialing and recorded message player to make the calls to Mr. Coleman.

104.     For violations of N.C. Gen. Stat. § 75-104(a), Mr. Coleman is entitled to recover $500 for the first violation, $1,000 for the second violation and $5,000 for the third and any other violation that occurs within two years of the first violation.

105.     Mr. Coleman has suffered concrete harm because of Defendants' unwanted and unsolicited telemarketing calls, including, but not limited to:

- Device storage;

- Lost time tending to and responding to the unsolicited calls and voicemails;

- Invasion of Privacy; and

- Nuisance.

106.   These forms of actual injury are sufficient for Article III standing purposes.

107.   To the extent Defendants are not directly liable for the calls at issue, Defendants are liable for each of the violating calls under one or more of the following theories of vicarious liability.

108.   Humana is vicariously liable for the calls placed by Aspen and its contract pharmacists because Humana authorized the calls, allowed Aspen to use its tradenames, and advised the consumers that the calls were made on Humana's behalf.

109.   Humana provided Aspen with access to information and systems that normally would be in Humana's exclusive control, including access to detailed information regarding the consumer's prescription drug records and contact information.

110.   Humana knowingly accepted the benefit of Aspen and its contract pharmacists' contacts with consumers despite the fact that these consumers were contacted through conduct that violates the TCPA.

111.   Alternatively, Humana ratified the TCPA violations by knowing facts that would cause an ordinarily prudent person to inquire as to whether Aspen and its contract pharmacists were complying with the TCPA.

## CLASS ACTION ALLEGATIONS

112.   Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two categories of proposed "Classes," the "TCPA Class" and the "North Carolina Classes" as defined as follows:

## THE TCPA CLASSES

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) called on their cellular telephone number (2) using a prerecorded voice message (3) for the same purpose the Plaintiff was called (4)

after a date Defendants' records indicate the called party opt-ed out of the program Defendants were calling about and/or requested not to be called.

("TCPA 227(b) Class")

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) placed two or more calls (2) for the purpose of encouraging the participation in Defendants' services (3) in a 12-month period (4) when the telephone number to which the calls were made was on the National Do-Not-Call Registry at the time of the calls.

("TCPA 227(c) Class")

Plaintiffs and all persons within the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) placed two or more calls (2) for the purpose of encouraging the participation in Defendants' services (3) in a 12-month period.

("TCPA Policy Class")

## <u>NORTH CAROLINA CLASSES</u>

Plaintiff and all residents of the State of North Carolina who from two years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) placed a telephone solicitation (2) when the telephone number to which the telephone solicitation was made was on the National Do-Not-Call Registry at the time of the call.

("NC 75-102(a) Class")

Plaintiff and all residents of the State of North Carolina who from two years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) placed a telephone solicitation (2) after the telephone subscriber previously communicated a desire to receive no further telephone solicitations to that number.

("NC 75-102(b) Class")

Plaintiff and all residents of the State of North Carolina who from two years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) placed (2) an unsolicited telephone call (3) using identical, or substantially identical, equipment and recorded message used to contact the Plaintiff.

("NC 75-104(a) Class")

(The TCPA Classes and the North Carolina Classes are collectively referred to herein as the "Classes.")

113.    Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

114.    The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

115.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

      a.   The time period(s) during which Defendants placed its calls;

      b.   The telephone numbers to which Defendants placed its calls;

      c.   The telephone numbers for which Defendants had prior express written consent;

      d.   The telephone numbers for which Defendants received opt-out requests and/or do-not-call requests;

      e.   The purposes of such calls; and

      f.   The names and addresses of Class members.

116.    The Classes are comprised of hundreds, if not thousands, of individuals.

117.    There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

      a.   Whether Defendants (or someone acting on their behalf) used an automatic dialing system or prerecorded voice in placing its calls;

b. Whether Defendants (or someone acting on their behalf) obtains prior express written consent;

c. Whether Defendants (or someone acting on their behalf) makes solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

d. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

e. Whether Defendant should be enjoined from engaging in such conduct in the future.

118. Mr. Coleman is a member of the Classes in that Defendants placed prerecorded and live telemarketing calls using an automatic telephone dialing system to his phone.

119. Mr. Coleman's claims are typical of the claims of the Members of the Classes in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

120. Mr. Coleman and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

121. Mr. Coleman has no interests antagonistic to, or in conflict with, the Classes.

122. Mr. Coleman will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

123. Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

124.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

125.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

126.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the TCPA 227(b) Class)**

127.     Mr. Coleman and the proposed TCPA 227(b) Class incorporate the foregoing allegations as if fully set forth herein.

128.     Defendants placed, or had placed on their behalf, prerecorded telemarketing telephone calls to Mr. Coleman's and TCPA 227(b) Class Members' telephone numbers without prior express written consent.

129.     The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

130.     Defendants have therefore violated 47 U.S.C. § 227(b).

131.     As a result of Defendants' unlawful conduct, Mr. Coleman and TCPA 227(b) Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

132.     Mr. Coleman and TCPA 227(b) Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiffs and the TCPA 227(c) Class)

133.    Mr. Coleman and the proposed TCPA 227(c) Class incorporate the foregoing allegations as if fully set forth herein.

134.    Defendant made, or had made on its behalf, telephone solicitations to Mr. Coleman's and TCPA 227(c) Class Members' telephone numbers.

135.    Mr. Coleman's and TCPA 227(c) Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

136.    Mr. Coleman and TCPA 227(c) Class Members each received two or more such calls in a 12-month period.

137.    Mr. Coleman and TCPA 227(c) Class Members are entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5).

138.    Mr. Coleman and TCPA 227(c) Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the TCPA Policy Class)

139.    Mr. Coleman and the proposed TCPA Policy Class incorporate the foregoing allegations as if fully set forth herein.

140.    The TCPA requires any party that is engaged in telemarketing institute and maintain a written internal do-not-call policy.  47 C.F.R. § 64.1200(d).

141.    Defendants violated the TCPA by not having sufficient internal do-not-call policies, by not following or honoring the policies it did have, and/or by not sufficiently ensuring

that those making calls on their behalf did the same—including by failing to actually honor do-not-call requests made by Mr. Coleman and other members of the TCPA Policy Class.

142.     As a result of these violations, Mr. Coleman and the TCPA Policy Class Members were damaged by Defendants' violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy.

143.     Mr. Coleman and TCPA Policy Class Members are entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5).

144.     Mr. Coleman and TCPA Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**FOURTH CAUSE OF ACTION**
**Violations of N.C. Gen. Stat. § 75-102(a)**
**(On Behalf of Plaintiff and the NC 75-102(a) Class)**

145.     Mr. Coleman and the proposed NC 75-102(a) Class incorporate the foregoing allegations as if fully set forth herein.

146.     Defendants made, or had made on their behalf, telephone solicitations to Mr. Coleman's and NC 75-102(a) Class Members' telephone numbers.

147.     Mr. Coleman's and NC 75-102(a) Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the telephone solicitations.

148.     Mr. Coleman and NC 75-102(a) Class Members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

149.     Mr. Coleman and NC 75-102(a) Class Members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. §75-105(b)(2).

150.    Mr. Coleman and NC 75-102(a) Class Members are entitled to an award of $5,000 in statutory damages for the third violation and any other violation that occurs within two (2) years of the first violation.

### FIFTH CAUSE OF ACTION
### Violations of N.C. Gen. Stat. § 75-102(b)
### (On Behalf of Plaintiff and the NC 75-102(b) Class)

151.    Mr. Coleman and the proposed NC 75-102(b) Class incorporate the foregoing allegations as if fully set forth herein.

152.    Defendants made, or had made on their behalf, telephone solicitations to Mr. Coleman's and NC 75-102(b) Class Members' telephone numbers after Mr. Coleman and the NC 75-102(b) Class Members communicated to Defendant a desire to receive no further telephone solicitations from the telephone solicitor to their respective numbers.

153.    Mr. Coleman and NC 75-102(b) Class Members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

154.    Mr. Coleman and NC 75-102(b) Class Members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. §75-105(b)(2).

155.    Mr. Coleman and NC 75-102(b) Class Members are entitled to an award of $5,000 in statutory damages for the third violation and any other violation that occurs within two (2) years of the first violation.

### SIXTH CAUSE OF ACTION
### Violations of N.C. Gen. Stat. § 75-104(a)
### (On Behalf of Plaintiff and the NC 75-104(a) Class)

156.    Mr. Coleman and the proposed NC 75-104(a) Class incorporate the foregoing allegations as if fully set forth herein.

157.     Defendants made, or had made on their behalf, unsolicited telephone calls to Mr. Coleman's and NC 75-104(a) Class Members' telephone numbers.

158.     These unsolicited telephone calls used an "automatic dialing and recorded message player."

159.     Mr. Coleman and NC 75-104(a) Class Members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

160.     Mr. Coleman and NC 75-104(a) Class Members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

161.     Mr. Coleman and NC 75-104(a) Class Members are entitled to an award of $5,000 in statutory damages for the third violation and any other violation that occurs within two (2) years of the first violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Coleman, individually and on behalf of the Classes, prays for the following relief:

A.   An order certifying the Classes as defined above, appointing Mr. Coleman as the representative of the Classes and appointing his counsel as Class Counsel;

B.   An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. §§ 227(b) and 227(c);

C.   An order declaring that Defendant's actions, as set out above, violate N.C. Gen. Stat. §§ 75-102(a), 75-102(b) and 75-104(a).

D.   An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

E.  An award of statutory damages;

F.  An award of treble damages;

G.  An award of reasonable attorneys' fees and costs; and

H.  Such other and further relief that the Court deems reasonable and just.

## **<u>JURY DEMAND</u>**

Mr. Coleman requests a trial by jury of all claims that can be so tried.

Dated:  August 12, 2022

/s Craig Shapiro_____
Craig Shapiro (NC State Bar # 48887)
The Law Offices of John T. Orcutt, P.C.
1738 Hillandale Road, Suite D
Durham, North Carolina 27705
(919) 286-1695
Fax: (919) 286-2704
cshapiro@johnorcutt.com

*s/ Max S. Morgan*_____
Max S. Morgan, Esquire
Eric H. Weitz, Esquire
The Weitz Firm, LLC
1515 Market Street, #1100
Philadelphia, Pennsylvania 19102
(267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com
(*Special Appearance* to be filed)